# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN JAIMES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>S. HERRERA, et al.,<br><br>　　　　　Defendants. | Case No.: 1:13-cv-01884-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>[ECF No. 74] |

Plaintiff Juan Jaimes is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed September 14, 2016.

## I.

## RELEVANT HISTORY

This action is proceeding against Defendants Herrera and Lozano for excessive force in violation of the Eighth Amendment.[1]

On November 12, 2015, Defendants Herrera and Lozano filed an answer to the complaint. (ECF No. 47.) On January 29, 2016, the discovery and scheduling order was issued. (ECF No. 56.) In said order, the previously assigned magistrate judge, ordered the parties to provide initial disclosures no later than March 14, 2016.

---

[1] On May 19, 2015, Defendants Herrera and Lozano filed a notice of death of Defendant Torres. On October 28, 2015, Defendant Torres was dismissed from the action, and on October 30, 2015, Plaintiff's state law battery claim was dismissed as barred by the statute of limitations. (ECF Nos. 44, 45.)

1

On April 22, 2016, Defendants filed a motion to compel Plaintiff to provide his initial disclosures.

On June 8, 2016, the Court granted Defendants' motion to compel Plaintiff to provide initial disclosures and directed Plaintiff to show cause why sanctions should not be imposed. (ECF No. 62.) Plaintiff failed to respond to the order to show cause.

On June 27, 2016, Defendants filed a motion to deem requests admitted. (ECF No. 65.) Plaintiff did not file an opposition.

On July 6, 2016, the Court sanctioned Plaintiff for failing to provide initial disclosures as ordered by the Court, and it was ordered that Plaintiff is not permitted to use any evidence in any motion, hearing or trial which should have been provided in his initial disclosures. (ECF No. 66.)

On July 29, 2016, the Court granted Defendants' motion to deem requests admitted. (ECF No. 70.)

As previously stated, on September 14, 2016, Defendants filed the instant motion for summary judgment. Although Plaintiff requested and received two extensions of time to file an opposition, no opposition was filed and the time frame to do so has expired.[2] Accordingly, Defendants' motion is deemed submitted for review without oral argument. Local Rule 230(l).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot

---

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

"[A] district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition." Tilley v. Tracy, No. C 03-5701 PJH (PR), 2007 WL 951835, at *2 (N.D. Cal. Mar. 27, 2007) (citing Cristobal v. Siegal, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (an unopposed motion may be granted only after court determines that there are no material issues of fact); see also Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993) (a district court's discretion under the local rules to grant a motion on the basis that it is unopposed "is necessarily abused when exercised to grant a motion for summary judgment where the movant's papers are insufficient to support that motion or on their face reveal a genuine issue of material fact.") In addition, Plaintiff's verified complaint may be used as an opposing affidavit if based on personal knowledge. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his

personal knowledge by citing two specific instances where correctional staff members … made statements from which a jury could reasonably infer a retaliatory motive.")

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint

On April 6, 2012, Plaintiff suffered a back injury, specifically, an L-1 vertebral burst fracture with compression. As a result of his injury, Plaintiff wears a back brace and walks with the aid of a cane.

On September 11, 2012, at approximately 6:15 a.m., officer Torres came to Plaintiff's cell door and inquired whether Plaintiff was ready to go to court. Plaintiff asked for a few minutes to wash up, and Torres stated, "Yes, let me known when you are ready." A short time later, Torres returned and performed an unclothed body search, handcuffed him, grabbed him by the left arm, and escorted him to "Receiving and Release."

After they arrived at the program office area, Plaintiff was approached by Defendants S. Herrera and M. Lozano, who were Institutional Gang Investigators. Plaintiff was directed to open his mouth. Before they could finish their sentence, both Defendants Herrera and Lozano placed their hands and arms around Plaintiff's neck and choked him until he passed out. When Plaintiff awoke, Herrera was kneeing him viciously in the back and neck. Both Herrera and Lozano then picked Plaintiff up and slammed him to the ground. Plaintiff asked them, "What did I do?" Defendants Herrera and Lozano continued to beat him and applied their body weight to Plaintiff's back.

1    Defendants Herrera and Lozano then escorted Plaintiff to the nurse. Plaintiff requested to be
2 examined. The nurse completed the CDC-7219 and released Plaintiff to Herrera and Lozano, who
3 then took Plaintiff by van to court.

After court, Plaintiff was taken to the I.G.I. office where he was threatened that if he filed something describing what had occurred, he would be pulled out of his cell at 3:00 a.m. by officers in black clothing and beaten to death or hung.

After Plaintiff returned to prison from Kings County Superior Court, at approximately 12:00 p.m. to 12:30 p.m., Plaintiff was taken to the I.G.I. office where Defendants Herrera and Lozano, among others, threatened his life. Plaintiff insisted on receiving medical care.

Defendants Herrera, Lozano and non-Defendants Harden and Molina escorted Plaintiff to the A-Facility Medical Clinic where Plaintiff saw a nurse.

Plaintiff was later taken to administrative segregation. Plaintiff states he had complications and pain in his back, neck, butt, and inside of the thigh. He states the pain later was so debilitating that he insisted on x-rays and learned his back was fractured and a vertebrae was broken.

### B. Defendants' Request for Judicial Notice

Defendants request that the Court take judicial notice of the following record and document: <u>People of the State of California v. Juan Jaimes</u>, CF01151A, Kern County Superior Court, Felony Abstract of Judgment and Information Sheet, May 6, 2014 and June 14, 2013 (Defs.' Ex. 8.)

Under Federal Rule of Evidence 201(b), the Court can take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." <u>Jespersen v. Harrah's Operating Co., Inc.</u>, 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc). The Court may properly take judicial notice of public records, including its own records and the records of other courts. <u>U.S. v. Wilson</u>, 631 F.2d 118, 119 (9th Cir. 1980); <u>Pavone v. Citicorp Credit Servs., Inc.</u>, 60 F.Supp.2d 1040, 1045 (S.D. Cal. 1997).

The Court has taken judicial notice of Defendants' Exhibit 8 as such documents are appropriate for judicial notice. (ECF No. 75, Ex. 8.)

///
///

**C.      Statement of Undisputed Facts[3]**

1.      On September 11, 2012, at approximately 6:15 a.m., officer Torres, transported Plaintiff to Receiving and Release for a court proceeding. (Compl., at p. 6, ¶ 2; ECF No. 1.)

2.      Plaintiff had never interacted with Institutional Gang Investigators Lozano and Herrera before the September 11, 2012 incident. (Defs.' Req. for Admission Nos. 11-12, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

3.      However, the Kern Valley State Prison (KVSP), Institutional Gang Investigation (IGI) Unit had been conducting an ongoing investigation into Plaintiff's affiliation with the Mexican Mafia prison gang. (Lozano Decl., ¶¶ 2, 5; Herrera Decl., ¶¶ 2, 5.)

4.      The IGI unit had reason to believe that Plaintiff was affiliated with the Mexican Mafia prison gang based on several incidents, including: (a) on November 23, 2010, while Plaintiff was housed at Pleasant Valley State Prison (PVSP), a kite was discovered in Plaintiff's personal property related to Mexican Mafia prison gang activities and politics for the PVSP Ad/Seg Unit; (b) on January 26, 2012, a self-admitted Mexican Mafia associated provided several kites to correctional staff. Plaintiff's personal information was discovered amongst the names and codes for validated Mexican Mafia members and associates in one of those kites; (c) on March 26, 2012, several small handwritten kites were received by the KVSP IGI Unit. The kites were discovered during the search of a validated Mexican Mafia associate. Plaintiff's personal information, gang moniker, and street gang affiliation was discovered amongst the names of several other Southern Hispanic gang members and Mexican Mafia associates. (Lozano Decl., ¶ 5; Herrera Decl., ¶ 5; Exs. 1-3.)

5.      As a result, Defendants Herrera and Lozano suspected that Plaintiff would attempt to transport Mexican Mafia related contraband to his court proceedings on September 11, 2012. (Lozano Decl., ¶ 6; Herrera Decl., ¶ 6.)

---

[3] Plaintiff neither filed his own separate statement of disputed facts nor admitted or denied the facts set forth by Defendants as undisputed. Local Rule 56-260(b). Therefore, Defendants' statement of undisputed facts is accepted except where brought into dispute by Plaintiff's verified complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

1  6. During the transportation, Plaintiff was carrying notes, also referred to as kites, in his mouth. (Defs.' Req. for Admission No. 15, ECF No. 65, p. 6; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

  7. Plaintiff placed the notes in his mouth to avoid detection by prison officials. (Defs.' Req. for Admission No. 16, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

  8. Plaintiff was also concealing heroin in his mouth to avoid detection by prison officials. (Defs.' Req. for Admission Nos. 17-18, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

  9. On September 11, 2012, Plaintiff was not wearing a CDCR mobility impairment vest, but he was wearing a Kydex jacket. (Defs.' Req. for Admission Nos. 13-14; ECF No. 65; Order Deeming Requests Admitted, July 29, 0216, ECF No. 70.)

  10. The Kydex jacket had a rigid plastic shell, that covered Plaintiff's torso, chest, and back. (Defs.' Req. for Admission Nos. 7-8.)

  11. During the transport, Defendants Herrera and Lozano, approached Plaintiff and instructed him to open his mouth. (Compl., at ¶¶ 3-4; Defs.' Req. for Admission No. 19, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70; Lozano Decl., ¶ 8; Herrera Decl., ¶ 9.)

  12. Plaintiff, however, failed to comply with Defendants Herrera and Lozano's order to open his mouth. (Defs.' Req. for Admission No. 20, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

  13. Defendant Herrera did not knee Plaintiff viciously in the back and neck, kick, or punch Plaintiff. (Defs.' Req. for Admission Nos. 23, 25, 27, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

  14. Defendant Lozano ordered Plaintiff to open his mouth a second time, revealing bindles in Plaintiff's mouth. (Lozano Decl., ¶¶ 10-11; Herrera Decl., ¶¶ 10-11.)

///
///

15. Defendants ordered Plaintiff to spit out the contraband, but Plaintiff did not comply. (Defs.' Req. for Admission Nos. 21-22, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

16. Defendant Lozano did not knee Plaintiff viciously in the back and neck, kick, punch or choke Plaintiff. (Defs.' Req. for Admission Nos. 24, 26, 28, 29, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

17. After collecting the evidence, Defendants Herrera and Lozano escorted Plaintiff to Receiving and Release where a CDCR 7219 medical evaluation was conducted. (Lozano Decl., ¶ 25; Herrera Decl., ¶¶ 25-26.)

18. Plaintiff was evaluated by Dr. Akanno later that day who informed Plaintiff that he was "okay," gave Plaintiff a Toradol non-steroidal anti-inflammatory pill, and released him back to custody. (Compl. at pp. 9-10, 45-45, 49, 51, ECF No. 1.)

19. After the contraband was processed, the IGI unit determined that the bindles contained Mexican Mafia correspondence and heroin. (Lozano Decl., ¶¶ 31-33; Herrera Decl., ¶ 30.)

20. Specifically, the IGI unit's investigation into the kites Plaintiff was attempting to transport revealed that Plaintiff intended to deliver kites containing Mexican Mafia correspondence, to another inmate at his out to court appearance, in order to have them delivered to inmates housed at CSP-Corcoran, demonstrating his direct affiliation/association with the Mexican Mafia prison gang. (Lozano Decl., ¶ 35; Ex. 6.)

21. Plaintiff has since been validated as a Mexican Mafia associate. (Lozano Decl., ¶ 36; Herrera Decl., ¶ 31.)

22. In addition, Plaintiff was charged with, pled to, and found guilty of possession of drugs in prison on May 5, 2014, stemming from the September 11, 2012 incident. (Defs.' Req. for Admission No. 39, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70; Defs.' Req. for Judicial Not., Ex. 8.)

23. Plaintiff was sentenced to two years in prison for possession of drugs in prison in violation of Penal Code section 4573.6. (Defs.' Req. for Admission No. 40; ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70; Defs.' Req. for Judicial Not., Ex. 8.)

24. Plaintiff's May 5, 2014 conviction for possession of drugs in prison has not been reversed. (Defs.' Req. for Admission No. 41, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

25. Following the September 11, 2012 incident, Plaintiff filed a staff complaint. (Compl. at pp. 8, 24-49; Stiles Decl., ¶ 4.)

26. In response to Plaintiff's staff complaint, Lieutenant Stiles with the Investigative Services Unit at KVSP, conducted an investigation. (Stiles decl., ¶ 4.)

27. Based on Lieutenant Stiles review of Plaintiff's allegations, the staff incident report, the Use of Force videotaped interview of Plaintiff, the Medical Report, and interviews, Lieutenant Stiles determined that the Defendants acted within the confines of the Department Operations Manual and did not violate policy when retrieving the contraband from Plaintiff. (Stiles Decl., ¶¶5-6.)

28. Prior to the September 11, 2012, Plaintiff sustained a L-1 vertebral burst fracture with compression on April 6, 2012. (Defs.' Req. for Admission No. 1, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

29. Plaintiff's neurosurgeon, Dr. Leramo, recommended that Plaintiff undergo surgery for his lower back injury on or around April 18, 2012. (Defs.' Req. for Admission No. 2, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

30. Plaintiff, however, declined Dr. Leramo's recommendation for surgical intervention. (Defs.' Req. for Admission No. 3, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

31. Instead, Plaintiff elected to wear a Kydex jacket on or around April 18, 2012. (Defs.' Req. for Admission No. 4, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

32. Dr. Leramo informed Plaintiff that it could take six months to a year before his fracture could heal after wearing the Kydex jacket. (Defs.' Req. for Admission No. 5, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

33. Dr. Leramo, however, cautioned Plaintiff that he may never regain full or proper function. (Defs.' Req. for Admission No. 6, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

34. After the September 11, 2012 incident, Plaintiff underwent an x-ray examination on his lower back that revealed an "[o]ld fracture of L1, otherwise unremarkable study" on September 25, 2012. (Defs.' Req. for Admission No. 32, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

35. Plaintiff returned to neurosurgeon Dr. Rahimifar on October 26, 2012, who noted that Plaintiff's "compression fracture has practically completely healed with slight wedging anteriorly." (Defs.' Req. for Admission Nos. 33-34, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

36. As a result, Dr. Rahimifar told Plaintiff that he no longer needed to wear the Kydex jacket. (Defs.' Req. for Admission No. 35, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

37. Dr. Rahimifar also told Plaintiff that he did "not advise any surgery at [that] time since the fracture [had] matured and … healed at [that] time." (Defs.' Req. for Admission No. 36, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

38. Plaintiff's Kydex jacket was removed on or around November 30, 2012. (Defs.' Req. for Admission No. 37, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.)

### D. Findings on Defendants' Motion

Defendants move for summary judgment because the undisputed facts show that Plaintiff was transporting Mexican Mafia correspondence and heroin, and that the officers used permissible and minimal force to retrieve the contraband. Defendants also argue that Plaintiff's Eighth Amendment claim is barred because he has not overturned his sentence for possession of drugs before bringing his section 1983 complaint, and in the alternative, Defendants are entitled to qualified immunity.

In moving for summary judgment, Defendants rely in part on the deemed admissions by Plaintiff. A matter admitted under Rule 36 is "conclusively established." Fed. R. Civ. P. 36(b). "Such a matter 'cannot be overcome at the summary judgment stage by contradictory affidavit

testimony or other evidence in the summary judgment record.'" Hologic, Inc. v. SenoRx, Inc., No. C-08-00133 RMW, 2009 WL 8760730, at *6 (N.D. Cal. Oct. 30, 2009) (quoting In re Carney, 258 F.3d 415, 420 (5th Cir. 2001)). Because Plaintiff did not timely respond to the request for admissions and the Court has ordered those requests deemed admitted, the facts set forth in the requests for admissions are deemed admitted and conclusively established. (ECF Nos. 65, 70.)

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Hope v. Pelzer, 536 U.S. 730, 737 (2002) (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)) (quotation marks omitted). Among unnecessary and wanton inflictions of pain are those that are totally without penological justification, Hope, 536 U.S. at 737 (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)) (quotation marks omitted), and punitive treatment which amounts to gratuitous infliction of wanton and unnecessary pain is prohibited by the Eighth Amendment, id. at 738 (quotation marks omitted).

What is necessary to show sufficient harm under the Eighth Amendment depends upon the claim at issue, with the objective component being contextual and responsive to contemporary standards of decency. Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quotation marks and citations omitted). For excessive force claims, the core judicial inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (quotation marks omitted). Not every malevolent touch by a prison guard gives rise to a federal cause of action. Wilkins, 559 U.S. at 37 (citing Hudson, 503 U.S. at 9) (quotation marks omitted). Necessarily excluded from constitutional recognition is the *de minimis* use of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. Wilkins, 559 U.S. at 37-8, 130 S.Ct. at 1178 (citing Hudson, 503 U.S. at 9-10) (quotations marks omitted).

In determining whether the use of force was wanton and unnecessary, courts may evaluate the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (quotation marks and citations omitted). While the absence of a serious injury is relevant to the Eighth Amendment inquiry,

it does not end it. Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency. Wilkins, 559 U.S. at 37 (citing Hudson, 503 U.S. at 9) (quotation marks omitted). Thus, it is the use of force rather than the resulting injury which ultimately counts. Wilkins, 559 U.S. at 37-8. However, courts must accord prison administrators wide-ranging deference in the adopting and execution of policies and practices to further institutional order and security. Bell v. Wolfish, 441 U.S. 520, 547 (1979); Jeffers v. Gomez, 267 F.3d 895, 917 (9th Cir. 2001).

39. In applying the Hudson factors to the evidence before the Court, there is no genuine issue of material fact. It is undisputed that the IGI unit was conducting an investigation into Plaintiff based on his suspected affiliation with the Mexican Mafia prison gang. Defendants Herrera and Lozano therefore suspected Plaintiff would attempt to transport Mexican Mafia related contraband to his court proceedings on September 11, 2012. Defendants' experience in investigating prison gangs revealed that inmates who are attending out to court proceedings, attempt to exchange gang-related information or transport narcotics. (Herrera Decl., ¶ 5; Lozano Decl., ¶ 5.) Therefore, during the transport, Defendants Herrera and Lozano instructed Plaintiff to open his mouth. However, Plaintiff failed to comply with the Defendants' orders. Defendant Lozano ordered Plaintiff to open his mouth a second time and saw bindles in Plaintiff's mouth. Based on the ongoing investigation and Plaintiff's failure to comply with the order to open his mouth, Defendants Herrera and Lozano reasonably believed that the safety and security of the institution and the safety of others was in jeopardy. Thus, it is undisputed that a threat was reasonably perceived by Defendants Herrera and Lozano. Furthermore, Defendants attempted to temper the severity of their response by giving verbal commands for Plaintiff to open his mouth before attempting to retrieve the contraband themselves. Associate Warden, J. Stiles, declares that CDCR Operations Manual section 52050.22, permits instruction into an inmate's body when the contraband is clearly identifiable and constitutes a clear and present danger to the security of the situation or the safety of other persons.[4] (Stiles Decl., ¶ 9,

---

[4] The Department Operations Manual policy concerning oral cavity searches, DOM 5250.21.4, at that time was designed to eliminate the use of a carotid restraint control hold, and officers did not receive training that would instruct them not to use any physical force to retrieve apparent and visible contraband from an inmate's mouth. (Stiles Decl., ¶ 13.) Stiles further

ECF No. 74-10.) Contrary to Plaintiff's allegations in the complaint, based on Plaintiff's admissions it is conclusively established that Defendants Herrera and Lozano did not knee, kick, or punch Plaintiff, and Defendant Lozano did not choke Plaintiff. (Defs.' Req. for Admission Nos. 24, 26, 28, 29, ECF No. 65; Order Deeming Requests Admitted, July 29, 2016, ECF No. 70.) Defendant Herrera declares that after he observed the bindles in Plaintiff's mouth he grabbed Plaintiff's chin area and back of his head in order for Plaintiff to spit out the contraband. (Herrera Decl. ¶ 13.) Defendants declare that they ordered Plaintiff to get to the ground, which he refused, and Defendants then lowered Plaintiff into a seated position then leaned him forward to spit out the bindles. (Herrera Decl., ¶¶ 20, 22-23; Lozano Decl., ¶¶ 17-20.) The IGI unit subsequently determined that the bindles contained Mexican Mafia correspondence and heroin.

Plaintiff has presented no evidence to support the finding that he suffered any physical injury as a result of the incident. After the items were retrieved, Plaintiff was transported to Receiving and Release where a medical evaluation was conducted. The CDCR 7219 medical evaluation form did not note any injuries. (Defs' Ex. 4, ECF No. 74-7.) Plaintiff was also evaluated by Dr. Akanno later that day who determined Plaintiff was "okay," gave Plaintiff a Toradol non-steroidal anti-inflammatory pill, and released him back to custody. (Compl. at pp. 9-10, 45-46, 49, 51, ECF No. 1.) In addition to the lack of visible injuries, Plaintiff's preexisting back injury healed as scheduled. Indeed, Plaintiff had an x-ray examination just days after the incident that revealed an old fracture, but was otherwise unremarkable, and Plaintiff offers no contrary evidence.

To overcome the motion for summary judgment, Plaintiff must raise a trial issue of fact establishing that Defendants Herrera and Lozano applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. Based on the evidence presented, viewed in the light most favorable to Plaintiff, the Court finds that there is no triable issue of material fact as to whether Defendants Herrera and Lozano used excessive force to Plaintiff on September 11, 2012. The purported use of force by Defendants Herrera and Lozano was justified

---

declares that subsequent to the time at issue in this case, officers have received new training and have been instructed to not use any physical restraint to retrieve items from an inmate's mouth. The current preferred method is to permit the inmate to swallow the contraband and place them on contraband surveillance watch. (Stiles Decl., ¶ 12.)

13

because it was a good-faith effort to restore order, and there is no evidence from which a reasonable jury could find that these Defendants applied such force maliciously and sadistically to cause harm. Hudson, 502 U.S. at 7. Accordingly, Defendants' motion for summary judgment should be granted.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and

2. The Clerk of Court be directed to enter judgment in favor of Defendants Herrera and Lozano.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 19, 2017**

UNITED STATES MAGISTRATE JUDGE